IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | CASE NO. BK07-42271-TLS |
| GARY M. & JOYCE BURIVAL, ) | BK07-42273-TLS |
| ) | |
| RICHARD BURIVAL and PHILIP BURIVAL, ) | JOINTLY ADMINISTERED |
| d/b/a BURIVAL BROTHERS, a partnership, ) | |
| ) | A10-4012-TLS |
| Debtor(s). ) | |
| RICK D. LANGE, Chapter 11 Trustee, ) | CHAPTER 11 |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| JAMES MALY, ) | |
| ) | |
| Defendant. ) | |

## ORDER

This matter is before the court on the plaintiff's motion for summary judgment (Fil. #11) and objection by the defendant (Fil. #18), and on the plaintiff's motion to strike affidavits (Fil. #24). Brian S. Kruse represents the plaintiff, and Wayne E. Griffin represents the defendant. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

The motion for summary judgment is denied. The motion to strike is granted to the extent explained below.

Mr. Maly is a landowner who rented farmland to the debtors pre-petition. He has filed proofs of claim in the bankruptcy case for unpaid rent, asserting secured claims based on his U.C.C. filings regarding the leases. The bankruptcy trustee filed this adversary proceeding to avoid Mr. Maly's alleged liens and have his claims determined to be unsecured. The trustee now moves for summary judgment on all counts.

I. Legal Standard

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only

if there is a 'genuine' dispute as to those facts." *Ricci v. DeStefano*, ___ U.S. ___, 129 S. Ct. 2658, 2677 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). *See also Celotex Corp.*, 477 U.S. at 324 (where the nonmoving party "will bear the burden of proof at trial on a dispositive issue," the nonmoving party bears the burden of production under Rule 56 to "designate specific facts showing that there is a genuine issue for trial").

II. Discussion

    A.    Background

The parties agree on the following facts:

1. On November 29, 2007, Gary and Joyce Burival ("Gary and Joyce") and Richard Burival and Phillip Burival d/b/a Burival Brothers, a partnership ("Burival Brothers"), filed for Chapter 11 bankruptcy protection.

2. The trustee is the duly appointed and qualified Chapter 11 bankruptcy trustee for the jointly administered bankruptcy cases of Gary and Joyce and Burival Brothers (collectively "the debtors"). The trustee was appointed Chapter 11 trustee effective March 2, 2009, pursuant to an application filed by the United States Trustee at Filing No. 1003, which was approved by order at Filing No. 1034.

3. Defendant James Maly is an individual residing in the State of Nebraska, and has filed claims in this bankruptcy case and submitted himself to the jurisdiction of this court.

4. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. §§ 544, 545, 547, 550, and 551. This court has the authority to grant the relief requested herein. This is a core proceeding pursuant to, without limitation, 28 U.S.C. §157(b)(2)(A), (B), (F), (K), and (O).

5. Venue in this court is proper pursuant to 11 U.S.C. § 1409(a).

6. Mr. Maly filed Claim Nos. 18-1 and 18-2 in the Burival Brothers' bankruptcy case and Claim Nos. 45-1 and 45-2 in Gary and Joyce's bankruptcy case. Claim 18 and Claim 45 are identical. The amended proofs of claim include damages to Mr. Maly's personal property.

7. Mr. Maly's claims arise out of two farm leases attached to the filed proofs of claim, purportedly respectively entered March 1, 2007, and March 30, 2007.

8. On or about July 28, 2006, Mr. Maly filed U.C.C. Financing Statement #9906463347-2, a copy of which is attached to Claim Nos. 18-1 and 45-1.

9. On or about October 1, 2007, Mr. Maly filed U.C.C. Financing Statement Amendment #9907527649-1.

10. Mr. Maly was granted an administrative priority claim of $181,275.80 for rent payments that came due post-petition by order of July 31, 2009 (Fil. #1245).

The evidence, in the form of Mr. Maly's proofs of claim, indicates Mr. Maly leased 524.6 acres of Holt County, Nebraska, land to Gary, Joyce, and Richard Burival for a one-year term beginning on March 1, 2007, with the rent of $78,690.00 payable in cash on December 1, 2007. The property also included four grain bins, for which the Burivals agreed to pay $19,200.00 on December 1, 2007, to use.

The parties also executed a lease for an additional 741.20 acres of land in Holt County on March 30, 2007. The one-year term ran from March 1, 2007, to March 1, 2008. The cash rent of $111,180.00 was payable in two installments – $27,795.00 upon signing the lease and $83,385.80 on December 1, 2007.

Each lease contained a provision for a landlord's lien:

Any Owner's lien provided by law on farm products, as defined by Neb. Rev. Stat. U.C.C. Sec. 9-102(34), or its successor provision, and Chapter 52, Art. 13 of the Revised Statutes of Nebraska, or its successor provisions, shall be security for the rent herein specified and for the faithful performance of the terms of the Lease and may be enforced in the manner prescribed by law.

Mr. Maly filed a U.C.C. financing statement with the Nebraska Secretary of State on July 28, 2006, listing the collateral covered as "a Farm lease" for the same parcels of land that were described in the March 30, 2007, lease. Mr. Maly filed an amendment to the financing statement on October 1, 2007, adding as collateral "all crops grown and the proceeds there from" on the real estate covered by both leases.

In this case, the trustee asserts that Mr. Maly's first financing statement failed to properly identify the collateral in which he claims a security interest, and that the amendment to the financing statement is preferential.

B.   Evidentiary Issues

As a threshold matter, the trustee challenges the evidence filed by Mr. Maly in opposition to the motion for summary judgment, arguing that much of it is irrelevant, lacks foundation, and contains opinion evidence. "Relevant evidence" is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, and relevant evidence is generally admissible. Fed. R. Evid. 401 and 402. The admissibility of a lay witness's opinion testimony is limited to those opinions or inferences which are rationally based on the witness's perception, helpful to a clear

understanding of the witness's testimony or the determination of a fact in issue, and not based on scientific, technical, or other specialized knowledge in the province of an expert witness. Fed. R. Evid. 701.

The evidence at issue are the affidavits of Mr. Maly and of his banker, Daniel R. Rohrer. Mr. Rohrer's affidavit addresses whether the "farm lease" collateral description in the U.C.C. financing statement is sufficient to put third parties on notice that Mr. Maly claims a crop lien. He concludes, based on his experience in the agricultural lending industry, that it is. However, the sufficiency of the contents of a U.C.C. financing statement is a legal question rather than a fact question. Mr. Rohrer's conclusion supports the defendant's argument, but lacks relevance and drifts into the domain of testimony by an expert legal witness when the issue here is whether the collateral description meets the legal basis set forth in the Uniform Commercial Code as adopted by the Nebraska legislature. For that reason, his affidavit does not meet evidentiary standards and will be stricken from the record.

The trustee also argues that paragraphs 7, 10, and 12 of Mr. Maly's affidavit should be stricken for lack of relevance, lack of foundation, and improper opinion testimony. Paragraph 7, like Mr. Rohrer's affidavit, concerns the sufficiency of the collateral description. For the reasons stated in the preceding paragraph, it will be stricken. Paragraph 10 addresses the issue of insolvency. It goes beyond stating facts and contains legal argument more appropriate for a brief. The last two sentences of that paragraph will be stricken. Paragraph 12 deals with the price and yield of crops harvested from the land rented by Mr. Maly to the Burivals. It lacks foundation and is entirely speculative. It will be stricken from the record.

      C.     <u>Collateral Description in the Financing Statement</u>

The trustee argues that the collateral description of "a Farm lease" in the financing statement is not sufficient to perfect a lien on the debtors' crops.

Nebraska law is clear that a landlord must comply with U.C.C. Article 9 filing requirements to protect his contractual lien. *Todsen v. Runge*, 318 N.W.2d 88, (Neb. 1982). Article 9 requires that a financing statement indicate the collateral it covers. Neb. U.C.C. § 9-502(a). "A financing statement sufficiently indicates the collateral that it covers if the financing statement provides: (1) a description of the collateral pursuant to section 9-108; or (2) an indication that the financing statement covers all assets or all personal property." Neb. U.C.C. § 9-504. The second paragraph of the official comment to § 9-504 says, "A financing statement sufficiently indicates collateral claimed to be covered by the financing statement if it satisfies the purpose of conditioning perfection on the filing of a financing statement, i.e., if it provides notice that a person may have a security interest in the collateral claimed."

Section 9-108 lists a variety of ways to adequately describe the collateral covered by the financing statement:

9-108. Sufficiency of description

> (a) Except as otherwise provided in subsections (c), (d), and (e), a description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described.
> (b) Except as otherwise provided in subsection (d), a description of collateral reasonably identifies the collateral if it identifies the collateral by:
>> (1) specific listing;
>> (2) category;
>> (3) except as otherwise provided in subsection (e), a type of collateral defined in the Uniform Commercial Code;
>> (4) quantity;
>> (5) computational or allocational formula or procedure; or
>> (6) except as otherwise provided in subsection (c), any other method, if the identity of the collateral is objectively determinable.
>
> (c) A description of collateral as "all the debtor's assets" or "all the debtor's personal property" or using words of similar import does not reasonably identify the collateral.
> (d) Except as otherwise provided in subsection (e), a description of a security entitlement, securities account, or commodity account is sufficient if it describes:
>> (1) the collateral by those terms or as investment property; or
>> (2) the underlying financial asset or commodity contract.
>
> (e) A description only by type of collateral defined in the Uniform Commercial Code is an insufficient description of:
>> (1) a commercial tort claim; or
>> (2) in a consumer transaction, consumer goods, a security entitlement, a securities account, or a commodity account.

In this case, Mr. Maly's U.C.C. filing identifies the collateral as "A Farm lease on" various tracts of legally described real estate. Nothing in the financing statement indicates that Mr. Maly was actually placing a lien on the crops grown on that real estate to secure the cash rent owed to him. "The purpose of requiring a description of collateral in a security agreement . . . is evidentiary. The test of sufficiency of a description under [§ 9-108] . . . is that the description do the job assigned to it: Make possible the identification of the collateral described." ¶ 2, Official Comment to Neb. U.C.C. § 9-108. Section 9-108 comes from former § 9-110, which stated that any description of collateral was sufficient, regardless of whether it was specific, if it reasonably identified what was described. Nebraska courts have interpreted that language to mean that a description is sufficient if it would "put a reasonably prudent person on notice as to which property was covered by a security agreement." *Barelmann v. Fox*, 478 N.W.2d 548, 557 (Neb. 1992); *see also Lindsay v. First Nat'l Bank, Bayard, Neb.*, 318 N.W.2d 275, 277 (Neb. 1982); *United States v. First Nat'l Bank in Ogallala, Neb.*, 470 F.2d 944 (8th Cir. 1973).

Section 9-108 expands on former § 9-110, suggesting identification of collateral by specific listing, category, type, or any other "objectively determinable" method. A third party would be hard-pressed to divine the ambit of Mr. Maly's lien by looking at this financing statement because it does not indicate anything about crops, farm products, or proceeds. As the trustee states in his brief, a

third party could reasonably believe that Mr. Maly was claiming a security interest in the payments due under the lease because the collateral description reads like a description of an account. Because this financing statement does not adequately describe the collateral in which Mr. Maly claims a lien, it is ineffective to perfect his security interest.

        D.      <u>Whether the Financing Statement Amendment is a Preference</u>

The trustee also asserts that the amendment to the financing statement is an avoidable preferential transfer. The trustee may avoid a pre-petition transfer of an interest of the debtor in property to or for the benefit of a creditor, for or on account of an antecedent debt, made within ninety days before the filing of the bankruptcy petition while the debtor was insolvent which enables the creditor to receive more than such creditor would receive under a hypothetical Chapter 7 liquidation. 11 U.S.C. § 547(b). The trustee must prove each element by a preponderance of the evidence. *Stingley v. AlliedSignal, Inc. (In re Libby Int'l, Inc.)*, 247 B.R. 463, 466 (B.A.P. 8th Cir. 2000). A "transfer" includes the creation of a lien. § 101(54).

The only elements in dispute are whether the debtor was insolvent at the time the 2007 financing statement amendment was filed to perfect the security interest granted by the 2007 leases and whether the transfer enabled Mr. Maly to receive more than he would have in a hypothetical Chapter 7 liquidation.

A debtor is presumed to have been insolvent on and during the 90 days immediately preceding the filing date of the petition. § 547(f). This presumption shifts the burden to the creditor to come forward with evidence of solvency. *Hoffinger Indus., Inc. v. Bunch (In re Hoffinger Indus., Inc.)*, 313 B.R. 812, 818 (Bankr. E.D. Ark. 2004). "Insolvency" means a financial condition such that the sum of a debtor's debts is greater than all of the debtor's property, at a fair valuation. § 101(32)(A). Information from a debtor's bankruptcy schedules can be sufficient to rebut the presumption of insolvency. *Fokkena v. Winston, Reuber, Byrne, P.C. (In re Johnson)*, 189 B.R. 744, 747 (Bankr. N.D. Iowa 1995). *See also Killips v. Schropp (In re Prime Realty, Inc.)*, 380 B.R. 529, 534 (B.A.P. 8th Cir. 2007) (when statutory presumption of insolvency is inapplicable, court should examine debtor's balance sheets to determine financial position at time of transfer).

In this case, Gary and Joyce's bankruptcy schedules, filed about one month after the petition date (and about three months after the transfer), show assets exceeding liabilities by $840,389.19. The Burival Brothers' schedules show assets exceeding liabilities by $3,224.18. This information rebuts the presumption of insolvency, leaving that element of § 547(b) unproven.

The final element is whether the transfer would enable the creditor to receive more than such creditor would receive under a hypothetical Chapter 7 liquidation. If the 2007 amendment had not occurred, the creditor would hold whatever lien was perfected by the 2006 financing statement. As explained in the preceding section, the collateral description in the financing statement was insufficient to establish a perfected security interest in the crops or crop proceeds, so the amendment would have put Mr. Maly in a better position relative to other creditors than the original financing statement did.

III. Conclusion

   As explained above, Mr. Maly's financing statement did not create a perfected security interest in the debtors' crops or crop proceeds. Because a fact issue remains as to the insolvency element of the trustee's argument that the amendment to the financing statement constitutes a preference, the motion for summary judgment must be denied.

   IT IS ORDERED:

   1. The plaintiff's motion for summary judgment (Fil. #11) is denied.

   2. The plaintiff's motion to strike affidavits (Fil. #24) is granted as follows:

     a. The affidavit of Daniel R. Rohrer (Fil. #20) is stricken in its entirety from the record.

     b. Paragraphs 7 and 12 of the affidavit of James R. Maly (Fil. #19) are stricken in their entirety from the record, and the last two sentences of Paragraph 10 of the Maly affidavit are stricken as well.

   3. Nothing in this order affects Mr. Maly's allowed administrative expense claim.

   DATED: October 18, 2010.

                BY THE COURT:

                /s/ Thomas L. Saladino
                Chief Judge

Notice given by the Court to:
   *Brian S. Kruse
   Wayne E. Griffin
   U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.